BANILLA GAMES, INC.,

                        Plaintiff,

   v.

RIVER CITY AMUSEMENTS LLC,
**Serve**: Lester Hahn, Registered Agent
         3035 Smith Lake Road
         West Bend, Wisconsin 53090

                    Defendant.

Civil Action No. 2:25-cv-01728

## VERIFIED COMPLAINT AND JURY DEMAND

    Plaintiff, Banilla Games, Inc. ("**Banilla**" or "**Plaintiff**"), by counsel, alleges the following for its Verified Complaint and Jury Demand against Defendant, River City Amusements LLC ("**River City Amusements**" or "**Defendant**").

### NATURE OF THE CASE

    1.    Over the past decade, Banilla has firmly established itself as a prominent leader in the skilled gaming and amusement industry. Banilla is widely recognized for its innovation and commitment to quality, attributes that have earned the company a strong reputation among distributors, route operators, and end-users. Banilla markets its flagship suite of video gaming systems under the "FUSION" brand ("**FUSION Games**") and uses the "FUSION" brand to identify and distinguish those products from others in the marketplace. Banilla's use of the "FUSION" brand, among others, reflects its ongoing dedication to excellence and its status as an industry leader. Banilla continuously polices and enforces its rights in its brands and other intellectual property, including the FUSION mark and the proprietary software and audiovisual works embodied in the Fusion Games, and is committed to safeguarding these valuable assets.

1

2.     This is a civil action arising from Defendant's infringement of Banilla's intellectual property rights, including, but not limited to, its exclusive rights in and to the FUSION brand of video gaming systems. Defendant has engaged in the unauthorized use, reproduction, and exploitation of Banilla's FUSION mark (the "**FUSION Mark**") and Banilla's federally registered TERROR TAVERN trademark (the "**TERROR TAVERN Mark**") and BANILLA GAMES trademark (the "**BANILLA GAMES Mark**"), thereby violating Banilla's exclusive rights in these marks and causing confusion, mistake, and deception in the marketplace.

3.     Banilla brings claims for copyright infringement pursuant to the United States Copyright Act of 1976, as amended (the "**Copyright Act**"), 17 U.S.C. § 101 *et seq.* These claims arise from Defendant's purchase, public display, distribution, and commercial exploitation of counterfeit FUSION Games and related software, which infringe upon Banilla's copyrighted works. Banilla seeks all remedies available under the Copyright Act, including, but not limited to, preliminary and permanent injunctive relief, recovery of Banilla's actual damages, and Defendant's profits attributable to the infringement (or statutory damages where applicable), costs and attorneys' fees where authorized, and such other monetary and equitable relief as the Court deems just and proper.

4.     Banilla further asserts claims for trademark counterfeiting and infringement under Section 32(1) of the Lanham Act,[1] 15 U.S.C. § 1114(1); for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); for trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and for related claims of unfair competition and trademark infringement under the statutory and common law of the State of Wisconsin.

---

[1] Hereinafter, the term "Lanham Act" refers to 15 U.S.C. §§ 1051 *et seq*.

5. Banilla also brings claims for trade secret misappropriation under the Defend Trade Secrets Act ("**DTSA**"), 18 U.S.C. § 1836, and under Wisconsin's Uniform Trade Secrets Act ("**WUTSA**"), Wis. Stat. § 134.90. These claims are based on Defendant's acquisition, use, and commercial exploitation of counterfeit FUSION Games, which incorporate pirated and unlawfully modified versions of Banilla's proprietary software. Banilla seeks all remedies available under the DTSA and WUTSA, including injunctive relief, damages for actual loss and unjust enrichment or a reasonable royalty, exemplary damages and attorneys' fees where authorized, and any other relief the Court deems appropriate.

6. The FUSION Mark, TERROR TAVERN Mark, and BANILLA GAMES Mark, as well as Banilla's federal copyrights, are valid, protectable, and distinctive, and they signify to consumers the high quality of Banilla's products in the various board, nudge, skill, redemption, and amusement game markets. These intellectual property assets embody the substantial goodwill and reputation that Banilla has developed and that belong exclusively to Banilla.

**THE PARTIES**

7. Banilla is a corporation duly organized and existing under the laws of the State of North Carolina with its principal place of business in Greenville, Pitt County, North Carolina. Banilla creates, designs, develops, and manufactures software, artwork, and audiovisual effects for various electronic games in various markets, including, but not limited to, the skill-based redemption and electronic pull-tab markets.

8. Defendant, River City Amusements LLC, is a limited liability company organized under the laws of the State of Wisconsin, with a principal office located at 921 Fond Du Lac Avenue, Kewaskum, Wisconsin 53040. River City Amusements' Registered Agent is Lester Hahn, with a registered agent office address of 3035 Smith Lake Road, West Bend, Wisconsin 53090.

3

**JURISDICTION AND VENUE**

9.     This Court has subject matter jurisdiction over Plaintiff's federal claims under the Lanham Act and the Copyright Act pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

10.     This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy and arise from a common nucleus of operative facts.

11.     This Court has personal jurisdiction over Defendant because, on information and belief, Defendant resides in this district, has operated, distributed, or placed infringing products within this State and this district, has committed tortious acts within this State and this district, and has otherwise established contacts within this State and this district sufficient to permit the exercise of general and specific jurisdiction.

12.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and under the provision of 28 U.S.C. § 1400(a) because Defendant resides in this district.

**FACTUAL ALLEGATIONS**

**I.     Banilla's Business and Intellectual Property**

13.     Since 2013, Banilla has invested millions of dollars in the development of its high-quality and reliable electronic games of skill. Multiple teams of dedicated in-house personnel, acting within the scope of their employment, are employed to develop, from scratch, all design and software components of the FUSION Games. These components include, but are not limited to, the games' source code, object code, two-dimensional and other artwork, static images, and other visual and audiovisual effects that contribute to the distinctive and enjoyable experience of the FUSION Games for end-users. All the artwork, static images, and audiovisual effects in

4

Banilla's games are original—i.e., created by the in-house game design teams—and none of that artwork, static images, and audiovisual effects is copied from any third-party author in the creation of these products.

14.     Banilla manufactures and distributes a variety of skill-game and amusement devices, including the FUSION-branded devices, which are currently in their sixth iteration.

15.     Banilla serves as the exclusive distributor of the FUSION Games. To obtain the FUSION Games, including the Copyrighted Works (as defined below), an individual or business must purchase the FUSION Games directly from Banilla or from another authorized reseller to whom Banilla has sold legitimate FUSION Games.

16.     The individual or business then makes the FUSION Games, including the Copyrighted Works (as defined below), available to customers in their places of business.

17.     Banilla has invested substantial time, effort, and resources in marketing the FUSION Games to its customers and providing exemplary customer service to those customers who purchase legitimate copies of the FUSION Games.

18.     Banilla's games are highly regarded by its customers (e.g., the operators who purchase the games) and end-users (e.g., the individuals who play the games), each of whom have come to expect high-quality products and superior customer service from Banilla.

19.     In furtherance of its brand-building efforts, Banilla has used the BANILLA GAMES Mark in commerce throughout the United States, including in Wisconsin, continuously since February 6, 2014. The BANILLA GAMES Mark has been used in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for various board, nudge, skill, redemption, and amusement game markets.

5

20.     Banilla continues to invest heavily in its intellectual property rights and has consistently and vigorously protected those rights.

21.     In that regard, Banilla has used the TERROR TAVERN Mark in commerce throughout the United States, including in Wisconsin, continuously since May 18, 2021, with the release of Banilla's Fusion 5 gaming platform. The TERROR TAVERN Mark has been used in connection with the offering for sale, sale, marketing, advertising, and promotion of Banilla's Fusion 5 gaming platform in the various board, nudge, skill, redemption, and amusement game markets.

22.     Similarly, Banilla is the owner of the intellectual property rights in the software for the FUSION Games, which comprise a series of game suites. These intellectual property rights include multiple federal copyright registrations issued by the United States Copyright Office for the computer files and associated audiovisual effects used in the FUSION line of video games, including, but not limited to, the following:

- Number PA0002206908, obtained on October 11, 2019, for Banilla's FUSION video game (the "**Fusion Copyrighted Work**").

- Number PA0002218349, obtained on October 11, 2019, for Banilla's FUSION 2 video game (the "**Fusion 2 Copyrighted Work**").

- Number PA0002218347, obtained on October 11, 2019, for Banilla's FUSION 3 video game (the "**Fusion 3 Copyrighted Work**").

- Number PA0002293309, obtained on May 24, 2021, for Banilla's FUSION 4 video game (the "**Fusion 4 Copyrighted Work**").

- Number PAu004088597, obtained on May 24, 2021, for Banilla's FUSION 5 video game (the "**Fusion 5 Copyrighted Work**").

- Number PA0002368424, obtained on July 19, 2022, for Banilla's FUSION Link video game (the "**Fusion Link Copyrighted Work**").

6

Banilla also owns federal copyright registrations for the two-dimensional artwork used in its individual game titles, including, as relevant here, the game titles "Plunderin' Pirates," Number PA0002533777, obtained on March 19, 2025,[2] "Topshot Golf," Number PA0002551916, obtained on June 26, 2025,[3] and "Terror Tavern," Number PA0002551216, obtained on June 13, 2025.[4] Hereinafter, the above copyrighted works will be referred to collectively as the "**Copyrighted Works**." The registrations for the Copyrighted Works are attached hereto as **Exhibit 1**.

23.     In addition, Banilla has continuously used the trademark "FUSION" in commerce throughout the United States since at least February 28, 2017, in connection with the creation, distribution, offering for sale, sale, marketing, and promotion of its FUSION Games, including the Copyrighted Works at issue in this action. Attached hereto as **Exhibit 2** are representative samples of materials evidencing Banilla's use of the FUSION Mark in connection with the FUSION Games.

24.     Since its introduction, the FUSION Games have become among the most popular skill games available in the United States, enjoying widespread recognition and use by players, locations, route operators, and resellers. *See, e.g.,* https://banillagames.com/product-category/platforms/skill-games/fusion-series/; *see also* https://banillagames.com/product-category/platforms/skill-games/fusion-link/. As a result of Banilla's longstanding and continuous use of the FUSION Mark, and the high quality of its goods and services, the FUSION Mark has become widely known and famous throughout the United States, including in Wisconsin. The FUSION Mark is closely identified with Banilla and represents substantial and valuable goodwill.

---

[2] Date of Publication is August 19, 2019.
[3] Date of Publication is May 18, 2021.
[4] Date of Publication is May 18, 2021.

7

25.     By virtue of its widespread, continuous, and exclusive use of the FUSION Mark to identify its products in the board, nudge, skill, redemption, and amusement game markets, and to identify Banilla as the source of those products, Banilla owns valid and subsisting state statutory and common law rights in and to the FUSION Mark.

26.     Banilla is the owner of valid and subsisting United States Trademark Registration No. 7,187,484 on the Principal Register of the United States Patent and Trademark Office ("**USPTO**") for the mark "BANILLA GAMES," which registration was issued on October 10, 2023, as shown in **Exhibit 3**. The registration covers the following goods and services: "Recorded computer software for playing games of chance relating to games, card games, slot games, video games, gaming, gambling, casino, bingo, instant win games, lottery and betting activities; [r]ecorded computer application software for video gaming consoles and video gaming machines for playing games of chance relating to games, card games, slot games, video games, gaming, gambling, casino, bingo, instant win games, lottery and betting activities; [r]ecorded computer software for enabling social gaming by uploading, posting, showing, displaying, tagging, blogging, sharing or otherwise providing electronic media or information regarding electronic gaming, entertainment, and general gaming interest via the Internet or other communications networks with third parties; [v]ideo gaming consoles for playing card games, slot games, video games, gaming, gambling, casino, bingo, instant win games, lottery and betting activities; [v]ideo gaming machines for playing computer games; [i]nstallation, maintenance, modification, and updating of electronic gaming and gambling systems being game machines and hardware; [p]roviding an internet site featuring news and information in the field of gaming; [e]ntertainment services, namely, providing online games of chance and social games being computer games; [e]ntertainment services, namely, conducting casino gaming contests and tournaments."

27.     Banilla has used the BANILLA GAMES Mark in commerce throughout the United States, including in Wisconsin, continuously since at least February 6, 2014, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

28.     Additionally, Banilla is the owner of valid and subsisting United States Trademark Registration No. 7,994,942 on the Principal Register of the USPTO for the mark "TERROR TAVERN," which registration was issued on October 21, 2025, as shown in **Exhibit 4**. The registration covers the following goods and services: "Recorded computer software and firmware for playing electronic games on a computerized platform, namely dedicated gaming consoles, video-based gaming machines, and video lottery terminals; recorded computer game software for gaming machines; recorded computer game software for gambling machines" and "[g]aming and gambling machines, namely, devices which accept a wager."

29.     Banilla has used the TERROR TAVERN Mark in commerce throughout the United States, including in Wisconsin, continuously since at least May 18, 2021, in connection with the offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets, namely the Fusion 5 gaming platform.

30.     As a result of its widespread, continuous, and exclusive use of the BANILLA GAMES Mark in commerce to identify its products in the board, nudge, skill, redemption, and amusement game markets, and to identify Banilla as the source of those products, Banilla owns valid and subsisting federal statutory and common law rights in the BANILLA GAMES Mark.

31.     Similarly, as a result of its widespread, continuous, and exclusive use of the TERROR TAVERN Mark in commerce to identify its games and products in the board, nudge, skill, redemption, and amusement game markets, namely the Fusion 5 gaming platform, Banilla

9

owns valid and subsisting federal statutory and common law rights in the TERROR TAVERN Mark.

32.     Banilla has invested substantial resources to promote and market goods and services offered under its BANILLA GAMES and TERROR TAVERN Marks. Through exclusive and continuous use, advertising, and promotion, the BANILLA GAMES and TERROR TAVERN Marks have come to symbolize the substantial goodwill that Banilla has developed and now owns in connection with its goods and services.

33.     Due to these efforts, and the marketplace recognition they have generated, Banilla has achieved substantial sales of its products for the various board, nudge, skill, redemption, and amusement game markets under both the FUSION, BANILLA GAMES, and TERROR TAVERN Marks throughout the United States, including in Wisconsin.

34.     Banilla's FUSION Mark, BANILLA GAMES Mark, and TERROR TAVERN Mark are distinctive to consumers and within the relevant trade.

35.     Banilla has devoted significant time, money, and resources to marketing, advertising, and promoting its products in the board, nudge, skill, redemption, and amusement game markets under the FUSION Mark and BANILLA GAMES Mark, and to promoting the TERROR TAVERN Mark, including through its website, its sales team, trade shows, its signage, and numerous other means. For example, each year Banilla attends national and regional trade shows such as the Amusement Expo International (hosted by the Amusement and Music Operators Association ("AMOA") and the American Amusement Machine Association ("AAMA")), the Southern Amusement & Entertainment Expo (hosted by the Georgia Amusement and Music Operators Association ("GAMOA")), and the Wisconsin Amusement and Music Operators ("WAMO") Annual Conference & Trade Show. Banilla also hosts training sessions at some of

10

those trade shows. *See, e.g.,* Matt Harding, *WAMO Annual Conference, Trade Show Held in Milwaukee*, RePlay Magazine (Aug. 6, 2021), https://www.replaymag.com/wamo-annual-conference-trade-show-held-in-milwaukee/ [replaymag.com].

36.     As a further result of its extensive investment in promoting its FUSION Games and related products, Banilla is widely recognized as a global leader in the electronic gaming industry. To protect its business and products, Banilla employs best practices, including registering copyrightable works, registering trademarks and service marks, protecting trade secrets, and implementing other measures to safeguard its intellectual property. These efforts have further enhanced the substantial goodwill associated with Banilla and its FUSION Mark, BANILLA GAMES Mark, and TERROR TAVERN Mark.

37.     Banilla also takes commercially reasonable measures to ensure the confidentiality of its proprietary software, including the software associated with the Copyrighted Works. Specifically, Banilla: (a) maintains and protects its source code as a trade secret; (b) implements measures to prevent unauthorized access to its source code, including through a process known as "obfuscation;" and (c) actively protects the artwork used in its computer files and software, including the Copyrighted Works, by creating, registering, and maintaining copyrights in both the static images and the audiovisual effects used in the software.

## II.     Banilla's Trade Secrets

38.     Computer software, like the FUSION Games, consists of both source code and object code. Source code is written by computer programmers in a human-readable programming language using a text editor. Object code is the result of compiling source code into machine-readable instructions that can be executed by a computer.

39.     With respect to the source code and object code associated with the FUSION Games, the source code is stored in multiple "library" files that are accessible only to employees who need access for their job responsibilities and who have executed binding confidentiality agreements. Pursuant to these agreements, employees are strictly prohibited from disclosing any information concerning the "confidential information," including source code. These confidentiality obligations survive the termination of employment.

40.     A computer program known as a compiler is used to convert the human-readable "library" files into machine-readable object code. This object code forms the basis for the executable files that launch each of the FUSION Games.

41.     The compiler includes an obfuscation feature, which introduces redundancies and complexities into each version of the FUSION Games to prevent tampering and reverse engineering of the source code. The source code for each of the FUSION Games, including the Fusion 4 and Fusion 5 Games, which are the subject of the Fusion 4 and Fusion 5 Copyrighted Works have been obfuscated.

42.     A specific "library" file controls the activation mechanism ("**Activation Mechanism**"). The Activation Mechanism is responsible for verifying the authenticity of the FUSION Games.

43.     Banilla employs commercially reasonable measures to protect the confidentiality and integrity of its "library" files, including both the source code and the Activation Mechanism. These "library files" are confidential and proprietary to Banilla and are maintained as trade secrets (collectively, the "**Source Code**").

44. For example, access to these "library" files is strictly limited to employees who have a legitimate need to know the information and who have executed enforceable confidentiality agreements.

45. Moreover, because the Source Code is obfuscated, it is not generally known outside of Banilla and further allows Banilla to maintain the Source Code as a trade secret. Indeed, because of this obfuscation of the Source Code, it would be very difficult for someone, even a sophisticated computer programmer, to re-create the exact logic used in the Source Code. Furthermore, because the Source Code is obfuscated, it is not generally known outside of Banilla. This obfuscation further enables Banilla to maintain the Source Code as a trade secret.

46. Thus, Banilla's "library" files derive independent economic value by remaining secret. Indeed, Banilla's Source Code, and its secrecy, allows Banilla to maintain its competitive advantage in the marketplace.

## III. Defendant's Counterfeiting and Infringing Activities

### *Copyright Infringement*

47. Banilla is the exclusive distributor of the FUSION Games. In order to obtain the FUSION Games, including the Copyrighted Works, an individual or business must purchase the FUSION Games directly from Banilla or from another authorized reseller to whom Banilla has sold legitimate FUSION Games. The individual or business then makes the FUSION Games, including the Copyrighted Works, available to customers in their places of business.

48. Before Defendant began offering and displaying the Illicit Games (defined below), consumers associated the FUSION Games with Banilla.

49. Defendant maintains an inventory sheet, which discloses that Defendant has purchased and/or vended at least two (2) unauthorized, pirated, and/or hacked versions of Fusion

13

4 and Fusion 5 gaming systems and the associated Copyrighted Works on the secondary market (the "**Illicit Games**"). The Illicit Games were not created, sold, or authorized or licensed by Banilla.

50. Defendant's inventory sheet specifically identifies other legitimate games Defendant owns or vends, but separates the counterfeit Illicit Games, and other counterfeit games, through the designation of "China."

51. Defendant has purchased legitimate games from Banilla and knows the costs associated with genuine games. By maintaining Illicit Games, while purchasing and using legitimate Banilla products, Defendant's actions are intentional, willful, and done in a manner to cause harm to Banilla.

52. Upon information and belief, Defendant has either purchased, sold, and/or vended additional Illicit Games or has the means, motive, and capability to obtain, provide, and use more Illicit Games.

53. Upon information and belief, the Illicit Games are the result of a third party's unauthorized actions, including unpackaging, decompiling, and de-obfuscating Banilla's trade secrets. Through these actions, the third party obtained access to multiple proprietary "library" files belonging to Banilla, which contain Banilla's confidential source code and trade secrets. In so doing, the third party misappropriated Banilla's trade secrets by circumventing the deliberate and intentional security measures implemented by Banilla to prevent unauthorized access to its proprietary information.

54. Upon information and belief, because of the aforementioned conduct, the third party was able to bypass Banilla's validation logic by unlawfully altering the Activation

14

Mechanism. This enabled the third party to market and sell unauthorized, modified versions of the Illicit Games, thereby infringing upon Banilla's intellectual property rights.

55. The hacked/pirated/counterfeit Illicit Games are sold for significantly less than genuine products. A genuine game board for the Fusion 4 and Fusion 5 Games cost $4,995.00 each. Upon information and belief, Defendant paid significantly less for the Illicit Games. This model allows the misappropriating third party, Defendant, to undercut Banilla's market share and steal Banilla's profits. In addition, Defendant can increase its profits at the expense of Banilla. By purchasing Illicit Games at a cheaper price, Defendant can maximize profits by receiving a larger portion of gross revenue, and ultimately secure locations that otherwise would use Banilla's legitimate machines.

56. Defendant's Illicit Games are nearly identical to the Copyrighted Works, in that they present the same game play and almost identical artwork. However, the Illicit Games perform at slower speeds than the Copyrighted Works, and the artwork in the Illicit Games present dimmer artwork than the Copyrighted Works. Additionally, the game board that runs the Illicit Games are designed completely differently from Banilla's genuine game boards.

57. Banilla owns all right, title, and interest in and to the copyrights covering the audiovisual effects that tie together the artwork used in the Copyrighted Works, and in this instance the Fusion 4 and Fusion 5 Copyrighted Works, which effects depict a series of related images that, when shown in a sequence, impart an impression of motion and the expression fixed in motion.

58. In addition, Banilla owns all right, title, and interest in and to the copyright covering the individual game title "Plunderin' Pirates" that is incorporated into the Fusion 4 Copyrighted Work and the individual game titles "Topshot Golf" and "Terror Tavern" that are incorporated into the Fusion 5 Copyrighted Work.

15

59. The Copyrighted Works are wholly original, and Banilla is the exclusive owner of all right, title, and interest in the Copyrighted Works and the owner of all the exclusive rights associated with those Copyrighted Works, including, but not limited to, the right to reproduce its software in copies and to distribute those copies to the public. Additionally, 17 U.S.C. § 106(5) also provides Banilla, as copyright holder for "motion picture or other audiovisual works," the exclusive right to display the work publicly.

60. Defendant has published and publicly displayed unauthorized, unlicensed, and counterfeit reproductions of the Copyrighted Works, without Banilla's authorization, consent, or knowledge, and without any compensation to Banilla. In particular, Defendant has published and publicly displayed unauthorized, unlicensed, and counterfeit versions of Fusion 4 and Fusion 5 Copyrighted Works.

*Trademark Infringement*

61. Banilla also owns the BANILLA GAMES Mark, which appears at the start-up of each FUSION Game.

62. Additionally, Banilla owns the TERROR TAVERN Mark, which appears on the home screen of the Fusion 5 game machine, and throughout the game play of the Terror Tavern game.

63. Without authorization from Banilla, Defendant has used the BANILLA GAMES Mark and the TERROR TAVERN Mark, or counterfeit and unauthorized imitations thereof that are confusingly similar to consumers and end-users (the "**Infringing Marks**"), in commerce within the United States, including within the state of Wisconsin, in connection with the marketing, distribution, and operation of the Illicit Games.

16

64.     Defendant's Illicit Games are confusingly similar to the authentic FUSION Games sold and distributed by Banilla, differing only in the speed of game play.

65.     Each time an Illicit Game is placed, publicly displayed, or put into operation, and each time such a machine is started, Defendant employs the Infringing Marks.

66.     Defendant's infringing actions have caused, or are likely to cause, confusion, mistake, and deception among relevant consuming public (e.g., consumers and end-users) as to the source, sponsorship, or affiliation of the Illicit Games, falsely suggesting an association with or endorsement by Banilla and deceiving the relevant consuming public into believing that the Illicit Games originate from, are associated or affiliated with, or otherwise authorized by Banilla.

67.     Defendant's acts are willful with the deliberate intent to trade on Banilla's goodwill, cause confusion and deception in the marketplace, and divert potential sales of Banilla's authentic FUSION Games to the Defendant.

*Damages from Copyright and Trademark Infringement*

68.     Defendant and its management, Lester Hahn, have been involved in the Wisconsin Amusement industry for several years. Defendant has conducted business with Banilla, including by purchasing authentic Banilla and FUSION Game products, and has attempted to continue doing so.

69.     In connection with the purchase of at least twenty (20) authentic games from Banilla, Defendant provided an inventory list that identified certain legitimate Banilla Games products. Through these transactions, Defendant obtained actual knowledge of Banilla's use of the FUSION, BANILLA GAMES, and TERROR TAVERN Marks, as well as other intellectual property that Banilla owns and maintains.

70. In addition to the legitimate games listed on Defendant's inventory list, Defendant also listed at least two (2) "China" or counterfeit FUSION 4 and FUSION 5 machines.

71. As a direct and proximate result of Defendant's actions, Banilla has suffered and continues to suffer, harm and damages from the unauthorized reproduction, publication, distribution, and public display of counterfeit versions of the Copyrighted Works, including, but not limited to, the FUSION 4 and FUSION 5 Copyrighted Works. Banilla has also suffered, and continues to suffer, harm and damages from Defendant's unauthorized use of the Infringing Marks.

72. Defendant has never accounted to or otherwise paid Banilla for Defendant's improper, illegal, and unauthorized use of counterfeit versions of the Copyrighted Works or the Infringing Marks.

73. Given Defendant's knowledge of Banilla's long-standing use of its Copyrighted Works, the FUSION Mark, the BANILLA GAMES Mark, and the TERROR TAVERN Mark, Defendant's acts are willful and deliberately intended to trade on the goodwill of Banilla's Copyrighted Works, FUSION, BANILLA GAMES, and TERROR TAVERN Marks, and cause confusion and deception in the marketplace, specifically Wisconsin.

74. Defendant's acts are causing, and, unless restrained, will continue to cause immediate irreparable harm to Banilla, for which Banilla has no adequate remedy at law.

*Trade Secret Misappropriation*

75. Banilla considers its Source Code confidential information and a trade secret and has taken reasonable steps to keep its Source Code secret.

76. Defendant purchased the Illicit Games, which actually misappropriated Banilla's Source Code.

18

77.     Defendant's actions, including Defendant's use, marketing, and/or selling of the Illicit Games, also misappropriates Banilla's Source Code.

78.     Defendant's foregoing actions, including the improper access to and use of Banilla's Source Code, were done without Banilla's permission.

79.     Defendant's acts are causing, and, unless restrained, will continue to cause, damage and immediate irreparable harm to Banilla, for which Banilla has no adequate remedy at law.

80.     Defendant's acts have caused, and will continue to cause, Banilla to lose profits.

81.     Consumers likely will associate Defendant's Illicit Games with Banilla because, *inter alia*, Defendant's Illicit Games mimic in every way the experience provided by the FUSION Games.

82.     Defendant has engaged in an unfair method of competition and unfair trade practice.

83.     Defendant's acts are causing, and, unless restrained, will continue to cause, damage and immediate irreparable harm to Banilla, for which Banilla has no adequate remedy at law.

## COUNT I
### Federal Trademark Infringement (TERROR TAVERN Mark)
### Pursuant to 15 U.S.C. § 1114

84.     Banilla incorporates Paragraphs 1 through 83 by reference.

85.     Banilla owns the U.S. Trademark Registration No. 7,994,942 for the TERROR TAVERN Trademark listed in **Exhibit 4**.

86.     As a result, Defendant has both actual and constructive knowledge of Banilla's federally registered TERROR TAVERN Mark.

87.     Defendant's use of the TERROR TAVERN Mark to promote the sale of goods differing materially from authorized goods sold, marketed, and used under the TERROR TAVERN

19

Mark by Banilla (e.g., the Illicit Games) is likely to cause confusion, deception, and mistake by creating the false and misleading impression that those goods are materially identical to their authorized counterparts.

88.     Defendant's use of the TERROR TAVERN Mark violates Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause, a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Banilla's goodwill and reputation as symbolized by the TERROR TAVERN Mark, for which Banilla has no adequate remedy at law.

89.     Defendant has caused, and is likely to continue causing, substantial injury to the public and to Banilla, and Banilla is entitled to injunctive relief and to recover Defendant's profits, trebled, or statutory damages at Banilla's election, as well as Banilla's actual damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**COUNT II**
**Federal Trademark Infringement (BANILLA GAMES Mark)**
**Pursuant to 15 U.S.C. § 1114**

90.     Banilla incorporates Paragraphs 1 through 89 by reference.

91.     Banilla owns the U.S. Trademark Registration No. 7,187,484 for the BANILLA GAMES Trademark listed in **Exhibit 3**.

92.     As a result, Defendant has both actual and constructive knowledge of Banilla's federally registered BANILLA GAMES trademark.

93.     Defendant's use of the BANILLA GAMES Trademark to promote the sale of goods differing materially from authorized goods sold under the BANILLA GAMES Trademark by Banilla (e.g., the Illicit Games) is likely to cause confusion, deception, and mistake by creating the

false and misleading impression that those goods are materially identical to their authorized counterparts.

94.     Defendant's use of the BANILLA GAMES Mark violates Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause, a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Banilla's goodwill and reputation as symbolized by the BANILLA GAMES Trademark, for which Banilla has no adequate remedy at law.

95.     Defendant has caused, and is likely to continue causing, substantial injury to the public and to Banilla, and Banilla is entitled to injunctive relief and to recover Defendant's profits, trebled, or statutory damages at Banilla's election, as well as Banilla's actual damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT III
## Copyright Infringement Pursuant to 17 U.S.C. §§ 106, 501

96.     Banilla incorporates Paragraphs 1 through 95 by reference.

97.     The Copyrighted Works are motion picture/audiovisual effects containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

98.     Banilla is the exclusive owner of all exclusive rights under copyright in the Copyrighted Works. Banilla owns valid copyright registrations, issued by the United States Copyright Office, for the Copyrighted Works, specifically the Fusion 4 and Fusion 5 Copyrighted Works, as well as the "Plunderin' Pirates," "Topshot Golf," and "Terror Tavern" copyrights. *See* Ex. 1.

99.     Multiple teams of dedicated in-house personnel, acting within the scope of their employment, created the Copyrighted Works. None of these employees have any contractual rights

21

to ownership of the Copyrighted Works and, as such, the Copyrighted Works constitute works made for hire.

100. Banilla is the owner of all right, title, and interest in and to the asserted copyrights underlying the Copyrighted Works.

101. The Copyrighted Works were registered within five (5) years of the first publication of the Copyrighted Works.

102. By making the Illicit Games available for use by end-users, Defendant has publicly displayed and published pirated, hacked, and/or counterfeit copies of the Fusion 4 and Fusion 5 Copyrighted Works, as well as the "Plunderin' Pirates," "Topshot Golf," and "Terror Tavern" copyrights, and has done so without Banilla's permission.

103. As a direct and proximate result of Defendant's infringement of Banilla's Fusion 4 and Fusion 5 Copyrighted Works, as well as the "Plunderin' Pirates," "Topshot Golf," and "Terror Tavern" copyrights, and pursuant to 17 U.S.C. § 503(a), this Court "may order the impounding . . . (A) of all copies or phonorecords claimed to have been made or used in violation of the exclusive right of the copyright owner; . . . (C) of records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court."

104. As a direct and proximate result of Defendant's infringement of Banilla's copyrights, Banilla is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c)(1), in an amount of up to $30,000.00, or up to $150,00.00 for a willful infringement, per copyright violation, with respect to Defendant's infringing use of the Fusion 4 and Fusion 5 Copyrighted Works, as well as the "Plunderin' Pirates," "Topshot Golf," and "Terror Tavern" copyrights, or such other amount as may be appropriate under 17 U.S.C. § 504(c). Alternatively, at Banilla's election,

pursuant to 17 U.S.C. § 504(b), Banilla shall be entitled to its actual damages, including Defendant's profits from the infringements, as will be proven at trial.

105.     In all events, Defendant's acts are causing, and, unless restrained, will continue to cause, damage and immediate irreparable harm to Banilla, for which Banilla has no adequate remedy at law. Banilla is thus entitled to impoundment of the Illicit Games, preliminary injunction, and permanent injunction.

## COUNT IV
## False Designation of Origin and
## Unfair Methods of Competition Pursuant to 15 U.S.C. § 1125

106.     Banilla incorporates Paragraphs 1 through 105 by reference.

107.     Banilla is the exclusive distributor of the FUSION Games, which games are sold by Banilla as either software boards or in freestanding gaming cabinets.

108.     Defendant has marketed, publicly displayed, presented, and offered for use to consumers its Illicit Games, which mimic the Fusion 4 and Fusion 5 Copyrighted Works, in interstate commerce. The Illicit Games were neither authorized, created, sold, licensed, sponsored, nor distributed by Banilla.

109.     Defendant is passing off its Illicit Games as those authorized, created, licensed, sold, and/or distributed by Banilla.

110.     Defendant's Illicit Games are likely to cause confusion, mistake, or deception of the consuming public as to the origin, source, sponsorship, or affiliation of the Illicit Games. Actual and potential consumers, upon encountering Defendant's Illicit Games, are likely to mistakenly believe that Defendant's Illicit Games originate with, or are sold, licensed, approved, sponsored by, or otherwise affiliated with Banilla.

23

111. By its unauthorized conduct, use of counterfeit copies of the Fusion 4 and Fusion 5 Copyrighted Works, as well as the "Plunderin' Pirates," "Topshot Golf," and "Terror Tavern" copyrights, and unauthorized use of Plaintiff's trademarks, Defendant has engaged in unfair competition with Banilla, false designation of origin, and misleading description and representation of fact in violation of the Lanham Act, 15 U.S.C. § 1125(a).

112. Banilla is entitled to an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees and costs, under 15 U.S.C. §§ 1117, as well as pre- and post-judgment interest.

113. Defendant's conduct is causing immediate and irreparable harm and injury to Banilla, and to its goodwill and reputation, and will continue to both damage Banilla and confuse the public unless enjoined. Banilla has no adequate remedy at law. Banilla is thus entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

## COUNT V
## Common Law Unfair Competition

114. Banilla incorporates Paragraphs 1 through 113 by reference.

115. This claim is for passing off, unfair competition, and deceptive trade practices in violation of the common law of Wisconsin.

116. Defendant's actions in passing off its Illicit Games as those authorized, created, licensed, sold, and/or distributed by Banilla are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's Illicit Games, thereby causing harm to the reputation and goodwill of Banilla.

117. Defendant has profited and been unjustly enriched by revenue from the Illicit Game(s) that Defendant would not otherwise have made but for its unlawful conduct.

118. Banilla has been damaged by Defendant's passing off and unfair or deceptive acts or practices.

119. As a result of Defendant's passing off and unfair trade practices, Banilla is entitled to an award of its damages, as well as injunctive and equitable relief.

## COUNT VI
## Common Law Trademark Infringement

120. Banilla incorporates Paragraphs 1 through 119 by reference.

121. This claim is for common law trademark infringement against Defendant based on its sale, offering for sale, use, placement, marketing, and/or public display of the Illicit Games bearing Banilla's FUSION Mark. Banilla is the owner of all common law rights in and to Banilla's FUSION Mark.

122. Defendant, without authority, has used and is continuing to use Banilla's FUSION Mark, and counterfeit imitations thereof, in connection with the sale, offering for sale, use, placement, marketing, and/or public display of the Illicit Games, thereby inducing Defendant's customers and/or clients, and others, to believe, contrary to fact, that the Illicit Games placed/sold by Defendant emanate or originate from Banilla, or that Banilla has approved, permitted, licensed, or otherwise associated itself with Defendant and its Illicit Games. Defendant's acts have damaged, impaired, and diluted the goodwill symbolized by Banilla's FUSION Mark, to Banilla's immediate and irreparable damage.

123. Actual and potential consumers, upon encountering Defendant's Illicit Games, are likely to be confused about the source of origin of the Illicit Games and will likely mistakenly believe that Defendant's Illicit Games originate with, or are sold, licensed, approved, sponsored by, or otherwise affiliated with Banilla.

25

124.     Defendant's unauthorized use of Banilla's FUSION Mark or counterfeit imitations thereof, which are either identical or confusingly similar to Banilla's FUSION Mark, in connection with the advertising and sale of FUSION Games or Illicit Games, is likely to cause confusion, mistake, or deception as to the source of Defendant's Illicit Games and constitutes infringement of Banilla's FUSION Mark under the common law of Wisconsin.

125.     Defendant has used Banilla's FUSION Mark on its Illicit Games that were not manufactured by or authorized by Banilla, and, therefore, Defendant has deliberately attempted to deceive and mislead consumers.

126.     Defendant, through its continued and unauthorized use of Banilla's FUSION Mark, is unfairly benefiting from and misappropriating Banilla's goodwill and reputation, resulting in serious, substantial, and irreparable injury to Banilla and the public.

**COUNT VII**
**Misappropriation of Trade Secrets**
**Pursuant to 18 U.S.C. § 1836(b)**

127.     Banilla incorporates Paragraphs 1 through 126 by reference.

128.     Banilla's confidential information includes trade secrets and/or other proprietary information that derives independent economic value from not being known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

129.     Banilla's confidential and trade secret information has been and continues to be the subject of reasonable measures to keep such information secret.

130.     Defendant misappropriated such confidential and trade secret information of Banilla in connection with the distribution and sale of the Illicit Games.

131. Defendant, at the time of use, knew, or had reason to know, the Illicit Games and the confidential and trade secret information used to create the Illicit Games were derived from or through a person who had utilized improper means to acquire such information.

132. As a result of Defendant's misappropriation, Banilla has been and continues to be damaged and irreparably injured, including, without limitation, the loss of sales and profits it would have earned but for Defendant's actions, and damage to Banilla's reputation among potential and existing customers, business partners, investors, and in the industry in general.

133. Defendant's misappropriation of confidential and trade secret information has caused and will continue to cause Banilla's irreparable and substantial injury and, therefore, cannot be fully redressed through damages alone. An injunction prohibiting Defendant from further use or disclosure of Banilla's confidential and trade secret information is necessary to provide Banilla with complete relief.

## COUNT VIII
## Violation of Wisconsin's Uniform Trade Secrets Act

134. Banilla incorporates Paragraphs 1 through 133 by reference.

135. Without Banilla's consent or permission, and in violation of the Wisconsin Uniform Trade Secrets Act ("**WUTSA**"), Wisconsin Statutes § 134.90. Defendant misappropriated Banilla's confidential and proprietary trade secrets, including, but not limited to, its Source Code.

136. Banilla's confidential and trade secret information is not generally known to or readily ascertainable by proper means to other people.

137. Defendant, at the time of use, knew, or had reason to know, the Illicit Games and the confidential and trade secret information used to create the Illicit Games were derived from or through a person who had utilized improper means to acquire such information.

138.    Defendant misappropriated Banilla's confidential information and trade secrets, including, but not limited to, its Source Code, by utilizing the Illicit Games through marketing, use, and either selling, or offering to sell, the Illicit Games into the open market.

139.    The aforementioned trade secrets have independent economic value from not being generally known to other persons.

140.    Banilla has taken reasonable precautions to maintain its confidential and trade secret information as confidential information, including, but not limited to, limiting access to such confidential and trade secret information.

141.    In violation of the WUTSA, Defendant misappropriated Banilla's trade secrets to benefit itself.

142.    As a result of Defendant's actions, Banilla has been damaged, and continues to be damaged, by the unauthorized reproduction, publication, distribution, public display, and sale of the Illicit Games. Defendant has never accounted to or otherwise paid Banilla for its use of the Illicit Games.

143.    Defendant's acts are causing, and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla for which Banilla has no adequate remedy at law.

144.    Defendant's actions have caused, and will continue to cause, Banilla to lose profits.

145.    Banilla is entitled to actual damages as a result of Defendant's misappropriation or a reasonable royalty for Defendant's misappropriation.

146.    As a result of Defendant's misappropriation, Banilla is entitled to an award of its damages, costs, reasonable attorneys' fees, as well as injunctive and equitable relief.

WHEREFORE, Plaintiff prays of the Court as follows:

1.    For judgment that Defendant River City Amusements LLC:

28

(a)  has violated the Copyright Act, 17 U.S.C. §§ 101, *et seq.*;

(b)  has violated the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a);

(c)  has engaged in unfair competition in violation of the common law of Wisconsin;

(d)  has violated 18 U.S.C. § 1836(b);

(e)  has engaged in trademark infringement in violation of the common law of Wisconsin; and

(f)  has violated the Wisconsin Uniform Trade Secrets Act, Wisconsin Statutes § 134.90.

2.  That an injunction be issued enjoining and restraining Defendant River City Amusements LLC, and each of its officers, agents, employees, attorneys, and all those in active concert or participation with it from:

(a)  Defendant's continued use, publication, and display of the TERROR TAVERN Mark and BANILLA GAMES Mark;

(b)  Defendant's continued use, publication, and display of the Fusion 4 and Fusion 5 Copyrighted Works, as well as the "Plunderin' Pirates," "Topshot Golf," and "Terror Tavern" copyrights;

(c)  Defendant's continued deceptive practices, including marketing or passing off the Illicit Games in interstate commerce; and

(d)  Defendant's use of Banilla's trademarks, intellectual property, and confidential information, including the Illicit Games.

3.  For the entry of an order directing Defendant, River City Amusements LLC, and all other persons, firms, or corporations in active concert or privity or in participation with

29

Defendant, to deliver up to Banilla all products, advertisements, promotional materials, packaging, and other items in their possession or under their control bearing the Copyrighted Works, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503(b).

4.      For an assessment of: actual damages, plus the amount of Defendant's profits attributable to the infringement(s), or in the alternative, an assessment of statutory damages, as authorized by 15 U.S.C. § 1117(c) in an amount no less than $4,000,000.00 for Defendant's willful infringement of the TERROR TAVERN Mark and BANILLA GAMES Mark.

5.      For an assessment of: (a) actual damages, plus the amount of Defendant's profits attributable to the infringement(s); or (b) in the alternative, an assessment of statutory damages, as authorized by 17 U.S.C. § 504(c) in an amount no less than $750,000.00 for Defendant's willful infringement of the Copyrighted Works.

6.      For an assessment of: (a) damages suffered by Banilla, pursuant to 15 U.S.C. § 1117(a); (b) an award of Banilla's costs and attorneys' fees to the full extent provided for by 15 U.S.C. § 1117; and (c) profits, damages, and fees, to the full extent available, pursuant to 18 U.S.C. 1836(b) and/or Wisconsin Statutes § 134.90(4).

7.      For a judgment against Defendant in an amount to be determined at trial, but not less than $4,750,000.00 plus interest and costs as allowed by law.

8.      For any damages awarded to Banilla as allowed by law for Defendant's violations.

9.      For costs and reasonable attorneys' fees, as allowed by law.

10.     For such other and further relief as the Court may deem just and proper.

30

## JURY TRIAL DEMAND

Banilla respectfully demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

Dated this 5th day of November 2025.

By: /s/ *Christopher W. Bowman*
Christopher W. Bowman (MN ID #0389933)
Jon R. Steckler (WI ID #1129957)
 (*admission forthcoming*)
MADIGAN, DAHL & HARLAN, PA
33 South Sixth Street #3675
Minneapolis, Minnesota 55402
Telephone:    (612) 604-2000
Facsimile:     (612) 604-2598
E-Mail:         bowman@mdh-law.com
                     steckler@mdh-law.com

Stephen M. Faraci, Sr., Esquire (VSB No. 42748)
(*pro hac vice forthcoming*)
Robert N. Drewry, Esquire (VSB No. 91282)
(*pro hac vice forthcoming*)
WHITEFORD, TAYLOR & PRESTON L.L.P.
1021 E. Cary Street, Suite 2001
Richmond, Virginia 23219
Telephone:    (804) 977-3307
Facsimile:     (804) 977-3298
E-Mail:         sfaraci@whitefordlaw.com
E-Mail:         rdrewry@whitefordlaw.com

*Attorneys for Banilla Games, Inc.*

## VERIFICATION

STATE OF NORTH CAROLINA

COUNTY OF PITT

    Marc C. Downing, being duly sworn, deposes and says that he is Chief Counsel and Senior Director of Compliance for Banilla Games, Inc. and as such is authorized to make this verification that he has read the foregoing VERIFIED COMPLAINT and the same is true, except as to those matters and things stated on information and belief, and, as to those, he believes them to be true to the best of his knowledge and belief.

Marc C. Downing
Chief Counsel and Senior Director of Compliance
Banilla Games, Inc.

STATE OF NORTH CAROLINA

COUNTY OF PITT

    Sworn to (or affirmed) and subscribed before me this day by Marc C. Downing, Chief Counsel and Senior Director of Compliance of Banilla Games, Inc.

Date: 11/3/2025

*Signature of Notary Public* Tamra L Edwards
Wayne, NC

My commission expires: 5-26-2027

TAMRA L EDWARDS
NOTARY
PUBLIC
Wayne County, NC